UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X    Case No.:21-cv-4619

CHELSEA C. STANLEY,

                        Plaintiff,

            -against-

MOUNT SINAI HEALTH SYSTEM, INC, and
STEPHANIE GUARENO, *individually*,

                        Defendants.
------------------------------------------------------------------------X

**COMPLAINT**

***PLAINTIFF DEMANDS
A TRIAL BY JURY***

Plaintiff, CHELSEA C. STANLEY, by her attorneys, PHILLIPS & ASSOCIATES, PLLC,

hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1.    Plaintiff complains pursuant to the Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. § 2000e *et seq*. ("Title VII"), 42 U.S.C. § 1981 ("1981"), the New York State

Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"), and the

New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et

seq* ("NYCHRL"). Plaintiff seeks damages to redress the injuries Plaintiff has suffered as

a result of being **discriminated against and retaliated against** and being subjected to a

racially **hostile work environment** by her employer solely due to her race (Black).

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is proper under 42 U.S.C. §§ 2000e-5(f)(3) and 1981, and 28

U.S.C. §§ 1331 and 1343 as it arises under the laws of the United States and is an action to

recover damages or to secure equitable or other relief under an Act of Congress providing

for the protection of civil rights.

3.    The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city

law pursuant to 28 U.S.C. § 1367.

4.  Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5.  Plaintiff filed a Charge of Discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6.  Plaintiff received a Notice of Right to Sue from the EEOC, dated February 26, 2021, concerning the herein charges of discrimination.  A copy of the Notice is annexed hereto.

7.  This Action is being commenced within 90 days of receipt of said Notice of Right to Sue.

8.  Contemporaneously with the filing of this Complaint, Plaintiff mailed a copy of the Complaint to the New York City Commission on Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York ("Corporation Counsel") pursuant to the notice requirements of Section 8-502 of the New York City Administrative Code. A copy of the certificate of service of the complaint on the NYCCHR and the Corporation Counsel is annexed hereto as Exhibit B.

## PARTIES

9.  At all times relevant hereto, Plaintiff is and was a resident of the State of New York and was a "person" and an "employee" entitled to protection as defined by Title VII, 1981, the NYSHRL, and the NYCHRL.

10. At all times relevant hereto, Defendant MOUNT SINAI HEALTH SYSTEM, (hereinafter, "MSHS"), is a hospital duly existing pursuant to, and by virtue of, the laws of the State of

New York, with its principal executive office located at One Gustave L. Levy Place, New York, New York, 10029.

11.    At all times relevant, Plaintiff worked at Defendant MSHS'S Morningside Hospital, located at 1111 Amsterdam Avenue, New York, New York 10025 (hereafter "Hospital").

12.    At all times material, Defendant STEPHANIE GUARENO (hereafter "GUARENO") is and was an employee of Defendant MSHS holding the position of Nurse Manager.

13.    At all times material, Defendant GUARENO was Plaintiff's Manager and had the ability to make decisions regarding the terms and conditions of Plaintiff's employment. Upon information and belief, Defendant GUARENO is a Hispanic woman. Defendant GUARENO is being sued herein in her official and individual capacities.

14.    Defendant MSHS and Defendant GUARENO are collectively referred to herein at times as "Defendants."

15.    At all times relevant hereto, Plaintiff was an employee of Defendants Defendant MSHS, and Defendant MSHS and its employee, Defendant GUARENO, repeatedly discriminated and retaliated against Plaintiff.

## MATERIAL FACTS

16.    In or around May 2016, Defendants employed Plaintiff as a Registered Nurse located in their Office.

17.    Plaintiff's current salary is approximately $95,000.00 annually.

18.    Throughout Plaintiff's employment with Defendants, Plaintiff's performance has been above-average. She is well qualified for the position of Registered Nurse.

19.    Indeed, during her employment, Plaintiff has received yearly annual raises in salary.

20.  In or around October 2018, Plaintiff began to experience a racially hostile work environment.

21.  Defendant GUARENO would regularly target and single out Plaintiff by treating Plaintiff negatively. She held Plaintiff to a different standard and bullied Plaintiff solely due to her race (Black).

22.  For example, on or about October 10, 2018, Defendant GUARENO denied Plaintiff time off even though she freely granted time off to six other staff members in or around the same time.

23.  In or around December 2018, in a meeting with Plaintiff, Defendant GUARENO stated to Plaintiff, in sum and substance, "As a Black woman, if you can't control your emotions you will be labeled as angry black woman."

24.  On or about January 18, 2019, Plaintiff complained to her union delegate about Defendant GUARENO's harassing and disparate treatments towards Plaintiff.

25.  Moreover, on or about January 18, 2019, Plaintiff reached out to Defendant MSHS's Human Resources and Labor Relations ("HR") and complained about Defendant GUARENO subjecting Plaintiff to a racially hostile work environment.

26.  In or around December 2019, Defendant GUARENO said to Plaintiff, in sum and substance, that Plaintiff "come[s] across as an angry black woman." Defendant GUARENO also said to Plaintiff, "As a black woman you need to be aware of your body language because you will be perceived differently than someone who is white."

27.  On or about April 10, 2020, in an attempt to discredit Plaintiff's reputation, Defendant GUARENO stated to other staff members that she was concerned about Plaintiff's mental

health because Plaintiff supposedly made many mistakes, and suggested Plaintiff should take the rest of the day off. Moreover, Plaintiff was required to speak with a licensed clinical social worker from Defendants' Employee Assistance Program ("EAP") before returning to work. The clinical social workers Plaintiff spoke with expressed that they were told Plaintiff made multiple mistakes in the past. This was not true.

28.　On or about May 27, 2020, Plaintiff reached out for the second time to HR and complained about Defendant GUARENO'S racist remarks and comments.

29.　On or about June 29, 2020, Defendant GUARENO approached Plaintiff aggressively and told Plaintiff that, based on alleged complaints made against Plaintiff, Plaintiff must attend a meeting with a union delegate present.

30.　On or about July 2, 2020, a meeting was held with Defendant GUARENO, Plaintiff, and Plaintiff's union delegate, Peggy Desario (hereafter "Peggy"). Defendant GUARENO proceeded to list the alleged complaints made against Plaintiff. Plaintiff reasonably believed Defendant GUARENO was creating a pretext in order to terminate Plaintiff.

31.　On or about July 6, 2020, in a meeting with Defendants' HR Representatives, Devin Sullivan (VP, Labor and Relations), Kathy Mann-Finnerty (Director of Cardiac Nursing), and Peggy Desario, Plaintiff reported Defendant GUARENO's racially discriminatory comments, demeaning remarks, and abusive behavior.

32.　Upon information and belief, Defendant MSHS took no action against Defendant GUARENO concerning the racially discriminatory remarks and the hostile work environment.

33.  Afterwards, Plaintiff was subjected to a retaliatory hostile environment and other retaliation.

34.  For example, on or about August 3, 2020, Seana Friedman, a nursing manager, who works closely with and is known to have a close friendship with Defendant GUARENO, began harassing and intimidating Plaintiff by accusing her of negligent care of a patient. Plaintiff tried to explain the patient's desaturation was not due to any fault of her own. However, Plaintiff was reprimanded. It should be noted that Plaintiff was not written up for this incident.

35.  Moreover, Defendant GUARENO began criticizing everything Plaintiff did and going out of her way to make Plaintiff's work environment difficult and uncomfortable.

36.  Since reporting Defendant GUARENO'S racially discriminatory and hostile conduct, Plaintiff has been involved in two fact-finding meetings with a union delegate. Plaintiff had never been involved in a fact-finding meeting before her complaint was made.

37.  On or about August 3, 2020, the high stress Plaintiff experienced as a result of Defendant GUARENO's harassing treatment caused her to seek treatment in the emergency room, where she was treated for pain, nausea, and other symptoms.

38.  On or about August 17, 2020, in a follow-up meeting with Defendants' HR Representatives, Devin Sullivan (VP, Labor and Relations), Kathy Mann-Finnerty (Director of Cardiac Nursing), and Peggy Desario, Plaintiff's complaints were minimized and dismissed. Plaintiff was told Defendant GUARENO was giving Plaintiff constructive criticism as a woman of color. Plaintiff shared that other Black employees had been told by Defendant GUARENO that they have an "attitude" and are "angry Black women."

6

When Plaintiff stated that Defendant GUARENO's conduct "clearly shows that she has a prejudice and racist animus that she needs to work on," Sullivan replied, "Well, we all have things we need to work on." Sullivan also stated, in sum and substance, "I remember when people used to come to work just to work, but now there is a lot of racial tension and racial relations have only gotten worse."

39.     In addition, Sullivan attempted to justify Defendant GUARENO's discriminatory conduct by explaining that Defendant GUARENO considers herself to be a woman of color and that she was only giving Plaintiff constructive criticism. Plaintiff responded, in sum and substance, "Although Defendant GUARENO is woman of color, Defendant GUARENO is not a black woman and has not has a black experience."

40.     Plaintiff felt further victimized and left the meeting with nothing addressed and/or resolved. Furthermore, Plaintiff felt that Defendant MSHS's HR representatives were condoning and enabling Defendant GUARENO's racist beliefs and behavior.

41.     It should be noted that GUARENO's racist comments to Plaintiff were not the only instance of Guareno making racially charged comments to a Black employee of Defendant. According to fellow Black employee Diana Abalola, GUARENO told her (Abalala) "did not want to come across as an angry black woman." Abalola also alleges that GUARENO bandied about racial stereotypes about Black women, telling Abalola she was "sassy," "rude," and had an "attitude." On other occasions, GUARENO told Abalola "that her hair did not look right," that "she needed to do something with her hair" and that it "looks like Buckwheat from the Little Rascals," and her hair looked better straightened.

7

42.    It should also be noted that, according to Abalola, GUARENO made similar comments to an employee named Daphne James and that non-Black employees received preferential treatment from GUARENO as to scheduling.

43.    Plaintiff continues to experience a hostile work environment through being singled out and targeted by Defendant GUARENO.

44.    Based on Defendant GUARENO's actions and behavior towards Plaintiff, it is clear that Plaintiff suffered a hostile work environment based on her race (Black) that substantially contributed to Plaintiff's physical symptoms that prompted an emergency room visit on August 3, 2020.

45.    Despite being aware of the harassment, Defendant MSHS has failed to take appropriate remedial action and properly investigate Plaintiff's multiple complaints of discrimination and hostile work environment.

46.    Defendant MSHS knew or should have known of the discriminatory and retaliatory conduct and failed to take corrective measures within its control.

47.    Defendant MSHS and its staff, each collectively and individually, condoned, ratified, and supported the discriminatory work environment against Plaintiff.

48.    As a result of the hostile work environment and harassment created and perpetuated by the Defendants, Plaintiff suffered and continues to suffer emotional distress.

49.    Upon information and belief, Plaintiff was a hard-working employee, who made every attempt to communicate with Defendants regarding Defendant GUARENO's discriminatory and harassing behavior.

50.     But for Defendant GUARENO's supervisory position with Defendant MSHS, Defendant GUARENO would not have been able to subject Plaintiff to discriminatory treatment and the hostile work environment alleged above.

51.     The above are just some examples of how Defendants regularly and continually harassed Plaintiff while employing Plaintiff.

52.     Plaintiff was treated this way solely due to Plaintiff's race (Black) and because of her objections to the discriminatory and retaliatory actions taken against Plaintiff.

53.     Plaintiff was repulsed, offended, disturbed, humiliated, victimized, and disgusted by this blatantly unlawful racial harassment, discrimination and hostile work environment.

54.     Defendants created a hostile work environment, which unreasonably interfered with Plaintiff's ability to perform Plaintiff's job.

55.     Defendants' actions and conduct were intentionally and intended to harm Plaintiff.

56.     Defendants unlawfully racially harassed, humiliated, embarrassed, degraded, and belittled Plaintiff.

57.     Plaintiff has suffered damages as well as future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

58.     Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

59.     As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

**First Cause of Action for Discrimination**
**Under Title VII of the Civil Rights Act of 1964**
**(Not Against Individual Defendant)**

60.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

9

61.    <u>Title VII of the Civil Rights Act of 1964</u>, as amended <u>42 U.S.C.</u> § 2000e-2(a)(1) provides,

in pertinent part, that:

> It shall be an unlawful employment practice for an employer… to
> discharge any individual, or otherwise to discriminate against any
> individual with respect to his compensation, terms, conditions, or
> privileges of employment, because of such individual's *race*, color,
> religion, sex, or national origin.

62.    Defendant MSHS engaged in unlawful employment practices prohibited under <u>42 U.S.C.</u>

§2000e *et seq*., by discriminating against Plaintiff solely based on her race.

63.    Defendant MSHS violated the section cited as set forth.

64.    Plaintiff is entitled to the maximum amount allowed under this statute/law.

**Second Cause of Action for Retaliation
Under Title VII of the Civil Rights Act of 1964
(Not Against Individual Defendant)**

65.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

66.    <u>Title VII of the Civil Rights Act of 1964</u>, *as amended*, <u>42 U.S.C.</u> §2000e-3(a) provides that

it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against

any of his employees . . . because he has opposed any practice made an unlawful

employment practice by this subchapter, or because he has made a charge, testified,

assisted or participated in any manner in an investigation, proceeding, or hearing under this

subchapter."

67.    Defendant MSHS engaged in an unlawful discriminatory practice by retaliating and

otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful

employment practices.

10

68.   Plaintiff is entitled to the maximum amount allowed under this statute/law.

## Third Cause of Action for Discrimination
## Under the 42 U.S.C. § 1981 (As Amended)
## (Against All Defendants)

69.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

70.   42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have
the same right in every State and Territory to make and enforce
contracts, to sue, be parties, give evidence, and to the full and
equal benefit of all laws and proceedings for the security of
persons and property as is enjoyed by white citizens, and shall be
subject to like punishment, pains, penalties, taxes, licenses, and
exactions of every kind, and to no other.

71.   Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by

discriminating against Plaintiff because of her race (Black).

72.   Plaintiff is entitled to the maximum amount allowed under this ordinance.

## Fourth Cause of Action for Retaliation
## Under the 42 U.S.C. § 1981 (As Amended)
## (Against All Defendants)

73.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

74.   By the acts and practices described above, Defendant retaliated against Plaintiff for her

opposition to unlawful discrimination under 42 U.S.C. §1981.

75.   Defendants acted with malice and/or reckless indifference to Plaintiff's statutorily

protected rights.

76.   Plaintiff is entitled to the maximum amount of damages allowed under this statute.

11

**Fifth Cause of Action for Discrimination
Under the New York State Executive Law
(Against all Defendants)**

77.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

78.   New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer
> or licensing agency, because of an individual's age, race, creed,
> color, national origin, sexual orientation, military status, sex,
> disability, predisposing genetic characteristics, familial status,
> marital status, or domestic violence victim status, to refuse to hire
> or employ or to bar or to discharge from employment such
> individual or to discriminate against such individual in
> compensation or in terms, conditions or privileges of employment.

79.   Defendants violated the section cited herein as set forth.

**Sixth Cause of Action for Discrimination
Under the New York State Executive Law
(Not Against Corporate Defendant)**

80.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

81.   New York State Executive Law § 296(6) provides that it shall be an unlawful

discriminatory practice: "For any person to aid, abet, incite, compel or coerce the doing of

any acts forbidden under this article, or attempt to do so."

82.   Defendant GUARENO engaged in an unlawful discriminatory practice in violation of New

York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and coercing

the discriminatory and retaliatory conduct.

12

**Seventh Cause of Action for Retaliation**
**Under the New York State Executive Law**
**(Against All Defendants)**

83.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

84.     New York State Executive Law § 296(1)(e) provides that, "It shall be an unlawful

discriminatory practice for any person engaged in any activity to which this section applies

to retaliate or discriminate against any person because he or she has filed a complaint,

testified, or assisted in any proceeding under this article."

85.     Defendants violated the section cited herein as set forth.

86.     Plaintiff is entitled to the maximum amount allowed under this statute.

**Eighth Cause of Action for Discrimination**
**Under the New York City Administrative Code**
**(Against all Defendants)**

87.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

88.     The New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer
> or an employee or agent thereof, because of the actual or perceived
> age, race, creed, color, national origin, gender, disability, marital
> status, partnership status, caregiver status, sexual orientation,
> uniformed service, or alienage or citizenship status of any person,
> to refuse to hire or employ or to bar or to discharge from
> employment such person or to discriminate against such person in
> compensation or in terms, conditions or privileges of employment.

89.     Defendants violated the section cited herein as set forth.

### Ninth Cause of Action for Discrimination
### Under the New York City Administrative Code
### (Not Against Corporate Defendant)

90.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

91.     The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

92.     Individual Defendant GUARENO engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

93.     Individual Defendant GUARENO violated this statute as set forth.

### Tenth Cause of Action for Retaliation
### Under the New York City Administrative Code
### (Against All Defendants)

94.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

95.     The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

96.     Defendants violated the section cited herein as set forth.

97.     Plaintiff is entitled to the maximum amount allowed under this statute.

### Eleventh Cause of Action for Vicarious Liability

**Under the New York City Administrative Code**
**(Not Against Individual Defendant)**

98.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

99.     The Administrative Code of City of New York § 8-107(13) provides for employer liability

for discriminatory conduct by an employee, agent or independent contractor.  This sub-

section states:

> a.  An employer shall be liable for an unlawful discriminatory practice
> based upon the conduct of an employee or agent which is in violation of any
> provision of this section other than subdivisions one and two of this section.
>
> b.  An employer shall be liable for an unlawful discriminatory practice
> based upon the conduct of an employee or agent which is in violation of
> subdivision one or two of this section only where: (1) the employee or agent
> exercised managerial or supervisory responsibility; or (2) the employer
> knew of the employee's or agent's discriminatory conduct, and acquiesced
> in such conduct or failed to take immediate and appropriate corrective
> action; an employer shall be deemed to have knowledge of an employee's
> or agent's discriminatory conduct where that conduct was known by another
> employee or agent who exercised managerial or supervisory responsibility;
> or (3) the employer should have known of the employee's or agent's
> discriminatory conduct and failed to exercise reasonable diligence to
> prevent such discriminatory conduct.
>
> c.  An employer shall be liable for an unlawful discriminatory practice
> committed   by a person employed as an independent contractor, other than
> an agent of such employer, to carry out work in furtherance of the
> employer's business enterprise only where such discriminatory conduct was
> committed in the course of such employment and the employer had actual
> knowledge of and acquiesced in such conduct.

100.    Defendant MSHS violated the section cited herein as set forth.

**PUNITIVE DAMAGES**

101.    Plaintiff is entitled to the maximum amount allowed under this statute/law.

15

102.   Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

103.   As such, punitive damages are appropriate as a result of Defendant's above-described conduct and Plaintiff demands Punitive Damages as against Defendant.

## JURY DEMAND

104.   Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, New York State Human Rights Law, and the New York City Administrative Code, in that Defendants discriminated against Plaintiff based on Plaintiff's race (Black), retaliated against Plaintiff due to her complaining of discrimination and created a hostile work environment;

B. Awarding damages to Plaintiff for all benefits resulting from Defendants' unlawful harassment, discrimination, retaliation, and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff damages for damages which such employment entails;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff liquidated damages;

G. Awarding Plaintiff prejudgment interest;

H.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

I.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Dated:  New York, New York
        May 21, 2021

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC


By:   _____/s/_____
      Marjorie Mesidor
      Steven R. Filosa
      Attorneys for Plaintiff
      585 Stewart Avenue, Suite 410
      Garden City, New York 11530
      T: (212) 248-7431
      E: MMesidor@tpglaws.com

17