USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/1/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

CHELSEA C. STANLEY,                                   :
                                                      :
                               Plaintiff,             :
                                                      :           21-CV-4619 (VEC)
                    -against-                          :
                                                      :           OPINION
                                                      :
MOUNT SINAI HEALTH SYSTEM, INC., and                  :
STEPHANIE GUARENO, INDIVIDUALLY,                      :
                                                      :
                               Defendants.            :

-----------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff Chelsea Stanley sued Mount Sinai Health System, Inc. ("Mount Sinai") and

Stephanie Guareno (collectively, "Defendants") for race discrimination and retaliation under

federal, state, and city law claiming that she was subjected to a hostile work environment based

on race.[1] *See* Compl., Dkt. 1. Defendants moved for summary judgment on all of Plaintiff's

claims. *See* Def. Mot., Dkt. 42. For the reasons discussed below, Defendants' motion for

summary judgment is GRANTED in part and DENIED in part.

## I.   BACKGROUND[2]

Plaintiff is a Black woman who has worked as a staff nurse for Mount Sinai since May

2016. 56.1 Stmt. ¶ 1. From May 2016 until May 2021, Plaintiff was supervised by Defendant

---

[1]        Specifically, Plaintiff alleges violations of Title VII of the Civil rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. § 1981; the Executive Law of the State of New York, New York State Human Rights Law ("NYSHRL") § 296; and the Administrative Code of the City of New York, New York City Human Rights Law ("NYCHRL") § 8–101. *See* Compl., Dkt. 1.

[2]        The facts are gathered from the parties' 56.1 statements, the exhibits attached to the parties' submissions, and the parties' summary judgment briefs. The facts are construed in the light most favorable to the non-moving party. *See Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). All facts are undisputed unless otherwise indicated. Defendants' 56.1 Statement along with Plaintiff's Responses, Dkt. 48, is cited as "56.1 Stmt." and includes paragraphs 1–65; Plaintiff's 56.1 Counter Statement and Defendants' Responses, Dkt. 53, which begins at paragraph 66, is cited as "56.1 Counter."

Guareno, who was the Nurse Manager assigned to the unit on which Plaintiff worked.  56.1 Stmt.

¶ 3.  Problems between Plaintiff and Guareno began in fall 2018.

### A.       October 2018

In or around October 2018, Guareno denied Plaintiff's request for time off despite

previously granting such requests.  *See id.* ¶¶ 10–12.  Plaintiff, who was attending school at the

time, sought two days off per week "for certain periods of time within the semester."  *Id.* ¶ 10.

Guareno denied the requests despite granting "time off to six other staff members in and around

the same time."  *Id.* ¶¶ 12–14.[3]  Plaintiff and Guareno met in October 2018 to discuss the time-

off requests and the days Plaintiff had called out sick.  56.1 Counter ¶ 66.  At the meeting,

Plaintiff claims she presented Guareno with a doctor's note demonstrating her inability to work

on the days she had called out sick.  *Id.* ¶¶ 66–67.  Plaintiff and Guareno also discussed the days

Plaintiff had requested time off for school.  *Id.* ¶ 71.  According to Plaintiff, "Guareno accused

Plaintiff of fabricating an illness to take the days off for school" and threatened to take

disciplinary action.  *Id.* ¶¶ 68–70.  Guareno testified that she denied the request because she was

finding it "increasingly difficult" to accommodate Plaintiff's school schedule, 56.1 Stmt. ¶ 12;

Plaintiff claims that Guareno accused her of being "selfish" and "a spoiled brat," 56.1 Counter ¶

71.  Plaintiff also claims that Guareno told her she was not permitted "to make more than four

'request' days on the schedule whereas other staff members had six 'request' days plus

vacation."  56.1 Stmt. ¶ 15.

A separate discussion with Guareno took place in or around November 2018 when,

according to Plaintiff, Guareno told her that "she came across as angry, aggressive and

unhappy;" Guareno testified that Plaintiff's demeanor had led to several complaints from patients

---

[3]       Two of the staff members who were granted time off were also Black nurses.  *Id.* ¶¶ 13–14.

and staff.  56.1 Counter ¶¶ 73–75; Pl. Tr. at 36–37; *see also* Guareno Tr. at 73, 83.  Plaintiff also claims that Guareno warned her that she "will not go far in the medical profession as a Black woman" if she didn't "learn to manage [her] emotions."  56.1 Counter ¶¶ 73–75; Pl. Tr. at 36–37.

It is undisputed that in January 2019, after the meetings with Guareno, Plaintiff drafted a complaint for her union representative to deliver to Mount Sinai's Department of Labor Relations ("Labor Relations").  56.1 Counter ¶ 76–77.  Plaintiff complained that "other nurses, including two Black nurses, received more time off than she did" and that Guareno told her she "lacked integrity for calling out sick."  56.1 Stmt. ¶ 29.  Plaintiff also complained about the comments Guareno made about her race, including that she came across as "an angry Black woman" who "can't control" her emotions.  56.1 Stmt. ¶ 29.[4]

### B.      December 2019

In or around December 2019, Plaintiff claims that Guareno again accused her of being "aggressive and unhappy" and that "she came across as an angry Black woman."  56.1 Counter ¶¶ 79–80.  In that discussion, Plaintiff contends that Guareno compared her to another Black nurse who, according to Plaintiff, Guareno described as "aggressive and angry" but that, because Plaintiff is younger, "she can still be trained."  *Id.* ¶ 83.  Plaintiff also claims that Guareno reiterated that she would have to "change her behavior if she expected to achieve success in the medical profession" and further warned her that, "as a Black woman," she might be perceived

---

[4]      Defendants do not dispute that Plaintiff "drafted" a complaint in January 2019, nor do they dispute that she "gave a copy of her complaint to her union delegate who then passed it on to Human Resources."  56.1 Counter ¶ 76–77.  In their 56.1 Statement, however, Defendants claim that Plaintiff first made the complaint about the "angry Black woman" comment to Labor Relations in July 2020.  56.1 Stmt. ¶ 29 (citing to Pl. Tr. at 53–54, Ex. 10).  Plaintiff disputes that timeline; Plaintiff states that Guareno referred to her as an "angry Black woman" on at least two occasions, and that Plaintiff first complained about it in January 2019.  *See* Pl. Tr. at 46–47; Pl. Decl. ¶ 3, Ex. F, Dkt. 47-6.

differently than someone who is white. *Id.* ¶¶ 81–82. Also in December 2019, Plaintiff claims Guareno accused her of taking a patient off a heparin drip in error; Guareno purportedly accused Plaintiff of not thinking critically and of putting her license at risk. *Id.* ¶¶ 84–86. Plaintiff further claims that, even though she was "cleared" of any wrongdoing, Guareno accused her of "lying, that it was her fault and that she should take responsibility" for what, presumably, Guareno viewed as a medication error.[5] *Id.* ¶ 88.

### C.    Spring 2020

In late May 2020, Plaintiff complained again about Guareno to Labor Relations. *Id.* ¶ 102. Plaintiff had suffered a needlestick in April — during the height of the COVID-19 pandemic — for which she visited a nurse practitioner from Employee Health Services ("EHS") and was sent home. *See* 56.1 Stmt. ¶ 16. When the EHS nurse contacted Guareno about Plaintiff, Guareno told the EHS nurse that she believed Plaintiff was overwhelmed. *Id.* ¶ 19. Plaintiff claims, however, that Guareno also told the EHS nurse that Plaintiff had "made multiple mistakes in the past" and should be sent home, and that Guareno asked the EHS nurse to conduct a mental health evaluation before clearing Plaintiff to return to work. *See id.* ¶¶ 18–20. The following day, Plaintiff obtained clearance from the Employee Assistance Program "(EAP") to return to work. *Id.* ¶ 21.[6]

In the May 2020 complaint, Plaintiff included Guareno's reaction to the needlestick, including that Guareno told EHS that Plaintiff had made mistakes and that Guareno was concerned for her mental health; she also complained that Guareno called her an "angry Black

---

[5]    The Court assumes that this event rested on the termination of the heparin drip being a medication error, although that is not stated in either party's 56.1 statement.

[6]    The parties dispute whose idea it was for Plaintiff to be sent home that day and to require clearance from EAP before returning — Guareno or the EHS nurse. *See* 56.1 Stmt. ¶¶ 18–20.

woman" and told her she could not care for open heart patients until she had more training.  *Id.* ¶ 22.

On June 22, 2020, the Vice President of Labor Relations spoke with Guareno about Plaintiff's complaint.  *Id.* ¶ 23.  Guareno confirmed that she spoke with EHS after the needlestick and "stated that she thought that [Plaintiff] might be overwhelmed."  *Id.* ¶¶ 24–25.  Guareno also claimed that she had received complaints from staff about Plaintiff's "lack of communication and failure to prioritize," which is why Guareno told Plaintiff that she could not care for open heart patients until she received further training.  *Id.* ¶ 26.[7]  According to Plaintiff, however, Guareno was unable to identify any specific complaints, and the staff members in the cardiac surgery unit to whom Plaintiff spoke denied that they had complained.  *Id.* ¶ 26.  Finally, Guareno denied calling Plaintiff an "angry Black woman" and claimed instead that she had "counseled her regarding her demeanor and attitude."  *Id.* ¶ 28.

After an investigation in June and July 2020, Labor Relations "found that Guareno believed that she was coaching Stanley regarding managing her emotions and that they were connecting as women of color."  *Id.* ¶ 31; *see also* Sullivan Tr. at 42–43, 60–61, 120–23.  Guareno, who identifies as a Black Latina, 56.1 Counter ¶ 151, ultimately admitted to using the phrase "angry Black woman" and was counseled "to be mindful of her words and that she should not have used that phrase," 56.1 Stmt. ¶ 33; 56.1 Counter ¶ 116.

---

[7]     The Court notes that, according to Guareno's deposition testimony, the decision to require Plaintiff to take additional training was "as a part of the cardiac surgery step down education program," and that "all the nurses were going to go through the program in rotation to reinforce their learned skills."  56.1 Counter ¶ 96; Guareno Tr. at 181.  Plaintiff also claimed to have spoken with the employees who purportedly complained about Plaintiff and each of them denied making any such complaint (although there is no evidence in the record to support that claim other than Plaintiff's own hearsay declaration).  *See* 56.1 Counter ¶¶ 99–100.  In any event, Plaintiff ultimately received additional training and began caring for open-heart patients shortly after her meeting with Guareno.  56.1 Stmt. ¶ 27.

### D.      The Fact Findings and Plaintiff's Performance Reviews

Subsequent to her May 2020 complaint to Labor Relations, Plaintiff was required to attend two "fact findings" with a union representative.  56.1 Stmt. ¶ 60.[8]  The first such fact-finding occurred in early July 2020 and involved complaints that had been made by two patient transporters in June 2020; they complained that Plaintiff ignored them when they approached her to transport patients and, in one incident, accused Plaintiff of "cancel[ing] the test on the spot without giving them a reason why."  56.1 Stmt. ¶¶ 34–35, 61; 56.1 Counter ¶ 110.  Guareno spoke with Plaintiff about the complaints on July 2, 2020; Plaintiff denied the accusations and, according to Plaintiff, Guareno acknowledged that "the transporters had a reputation for harassing people with spurious complaints."  56.1 Stmt. ¶¶ 35–37.  Guareno did not discipline Plaintiff in connection with the complaints.  *Id.* ¶ 38.

The second fact-finding occurred on August 13, 2020, and involved an incident in which Plaintiff was alleged to have "caused a patient to desaturate and end up in the CCU."  56.1 Counter ¶ 122–23.[9]  No discipline resulted from the fact finding, and Plaintiff was "cleared [] of any wrongdoing."  *See id.* ¶¶ 88, 127.

It is undisputed that during the five years she spent under Guareno's supervision, Plaintiff "was never written up."  56.1 Stmt. ¶ 39.  In Plaintiff's 2016, 2017, and 2018 performance appraisals, Guareno rated Plaintiff as "meets expectations" in every category and gave her an overall rating of "strong contributor."  *Id.* ¶ 45.  For her 2019 performance appraisal, Guareno

---

[8]      A "fact finding" is a formal meeting at which information is gathered regarding an incident involving a union staff member.  56.1 Counter ¶ 107.

[9]      Plaintiff speculates that this incident was fabricated by a friend of Guareno's as a direct response to the Complaints Plaintiff had made to Labor Relations. 56.1 Counter ¶¶ 121–23; *see also* Pl. Mem. of Law at 14–15, Dkt. 49.  Plaintiff presents no evidence to support her speculation, however.

rated Stanley as "meets expectations" in most categories, rated her as "exceeds expectations" in other categories, and gave her another overall rating of "strong contributor." *Id.* ¶¶ 46–47.

### E.   The EEOC Charge

On August 17, 2020, Plaintiff met again with Labor Relations; Plaintiff claims that she was told that "Guareno's use of the stereotypical term 'angry Black woman' was okay because Guareno is a woman of color." 56.1 Counter ¶¶ 128–29. Thereafter, Plaintiff claims that Guareno "frequently followed Plaintiff around the unit, watching her interactions with patients and watching her give medication," and that, in late 2020 or early 2021, Guareno accused Plaintiff of pushing a medication too quickly. *Id.* ¶ 132; Pl. Tr. at 137–38.[10]

In December 2020, Plaintiff filed a charge of race discrimination and retaliation with the Equal Employment Opportunity Commission (the "EEOC"); she received a right to sue letter in February 2021. 56.1 Stmt. ¶¶ 48–49. Plaintiff's allegations included that Guareno: called Plaintiff "incompetent;" said she was "selfish and a spoiled brat" for requesting time off; called her "an angry Black woman;" accused Plaintiff of lacking "critical thinking skills;" followed Plaintiff around "to intimidate her;" and refused to let Plaintiff "take care of open heart patients." *Id.* ¶¶ 50–51.

In May 2021, Guareno was promoted, and she was no longer Plaintiff's manager. 56.1 Counter ¶¶ 135–36. Plaintiff alleges that, despite Guareno's promotion, she continued to visit Plaintiff's unit frequently and to exercise significant influence over its operation; in November 2021, Plaintiff transferred to the night shift on another unit. 56.1 Stmt. ¶¶ 5–6; 56.1 Counter ¶ 138.

---

[10]    Defendants dispute this allegation. According to Guareno, "she shadowed Plaintiff about once a month, or maybe once or twice every quarter, as she did for each staff member." 56.1 Counter ¶¶ 132–33.

Plaintiff claims that other Black nurses, including Diana Abalola, had similar experiences with Guareno.  56.1 Counter ¶¶ 139–46.  Specifically, Plaintiff identified Dia Bacon, Jewally Linton, Rhina Perez, and one unnamed nurse who worked in a different unit as having had adverse experiences with Guareno.  *Id.*  Plaintiff has, however, presented no admissible evidence that any of these employees had negative experiences with Guareno.[11]

On May 24, 2021, Plaintiff sued Defendants for race discrimination and retaliation.  *See* Compl.; Pl. Mem. of Law at 1, Dkt. 49.  Defendants moved for summary judgment on all of Plaintiff's claims.  *See* Def. Mem. of Law, Dkt. 44.  For the reasons discussed below, Defendants' motion is granted in part and denied in part.

## DISCUSSION

### II.   Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Scott v. Harris,* 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted).

Although the Court must construe the facts in the light most favorable to the non-moving party, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (internal quotation marks and citation omitted).  Accordingly, to defeat a motion

---

[11]    Much of Defendants' discussion surrounding the viability of Plaintiff's claims focuses on the unsubstantiated claims of Ms. Abalola.  Abalola sued Defendants for race discrimination, hostile work environment, and retaliation; her claims were dismissed on summary judgment.  *See* Def. Mem. of Law at 6 (citing *Abalola v. St Luke's-Roosevelt Hosp. Ctr.*, No. 20-CV-6199, 2022 WL 973861 (S.D.N.Y. Mar. 30, 2022)), Dkt. 44.

for summary judgment, the nonmoving party must produce "specific facts showing that there is a

genuine issue for trial;" a "scintilla of evidence" is not enough.  *Fincher v. Depository Tr. &

Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (internal quotation marks and citation

omitted); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006); *see also D'Amico v.

City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (a party "must offer some hard evidence

showing that [her] version of the events is not wholly fanciful"); *Baity v. Kralik*, 51 F. Supp. 3d

414, 417–18 (S.D.N.Y. 2014) (a party opposing summary judgment must "specifically respond

to the assertion of each purported undisputed fact . . . and, if controverting any such fact, [must]

support its position by citing to admissible evidence in the record").

  At the summary judgment stage, the plaintiff's burden of proof "is *de minimis*."

*Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (citation omitted).  Because

employment discrimination cases rarely involve direct evidence of intentional discrimination,

"affidavits and depositions must be carefully scrutinized for circumstantial proof" of

discrimination.  *Turner v. NYU Hosps. Ctr.*, 784 F. Supp. 2d 266, 275 (S.D.N.Y. 2011) (citing

*Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994)), *aff'd*, 470 F.

App'x 20 (2d Cir. 2012).  "Even in the discrimination context, however, a plaintiff must provide

more than conclusory allegations to resist a motion for summary judgment."  *Holcomb v. Iona

Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.

1985)); *see also, e.g.*, *Dickens v. Hudson Sheraton Corp.*, 167 F. Supp. 3d 499, 510 (S.D.N.Y.

2016) ("[W]hen an employer provides convincing evidence to explain its conduct and the

plaintiff's argument consists of purely conclusory allegations of discrimination . . . the Court

may conclude that no material issue of fact exists.").

### III.    Analysis

Plaintiff brings race discrimination claims pursuant to Title VII, Section 1981, and under the NYSHRL and the NYCHRL, alleging both a discriminatory and retaliatory hostile work environment.  Compl. ¶¶ 60–89; Pl. Mem. of Law at 1. [12]  Each statute prohibits racial discrimination in the terms, conditions, or privileges of employment.  *See* 42 U.S.C. §§ 1981(a), 12112(a); N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8–107(1)(a).

Defendants moved for summary judgment on all of Plaintiff's claims, arguing that Plaintiff failed to show that she suffered disparate treatment compared to other non-Black nurses.  Def. Mem. of Law at 12–13.  Defendants further argue that most of Guareno's comments were "racially neutral" and that her use of the phrase "angry [B]lack woman" was nothing more than a "stray remark."  *Id.* at 10–11.  Plaintiff argues that even if most of Guareno's remarks were racially neutral, those comments, including those made to other Black nurses that Plaintiff learned of "second hand," are sufficient to create an issue of fact as to whether she suffered from a hostile work environment.  Pl. Mem. of Law at 9–11.

### A.    Discriminatory Hostile Work Environment [13]

#### 1.    Federal Claims

Hostile work environment claims, whether brought under Title VII or Section 1981, are analyzed under the same standard.  *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 261–62 (2d Cir.

---

[12]    Plaintiff also asserts an aiding-and-abetting claim against Guareno under New York City Admin. Code § 8–107(6), and vicarious liability against Mount Sinai under § 8-107(13).  Compl. ¶¶ 90–100.

[13]    Defendants argue that Plaintiff "abandoned her race [discrimination] claim" under Title VII because she "states that the only claims are for a hostile work environment and a retaliatory work environment."  Def. Reply at 2–3, Dkt. 54.  Contrary to Defendants' argument, a claim of race discrimination may lie under Title VII based on a hostile work environment theory.  *See, e.g.*, *Toombs v. N.Y.C. Hous. Auth.*, 830 F. App'x 665, 667–69 (2d Cir. 2020) (analyzing hostile work environment claim under Title VII).

2023).[14]  To establish that a hostile work environment constitutes discrimination, a plaintiff must

show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that

is sufficiently severe or pervasive to alter the conditions of the victim's employment and create

an abusive working environment."  *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir.

2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Fincher*, 604 F.3d

at 723–24.  "This standard has both objective and subjective components: the conduct

complained of must be severe or pervasive enough that a reasonable person would find it hostile

or abusive, and the victim must subjectively perceive the work environment to be abusive."

*Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014); *see also Duch v. Jakubek*, 588 F.3d 757,

762 (2d Cir. 2009) (same); *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (same).[15]

Furthermore, a plaintiff "must demonstrate that the conduct occurred because of [her] protected

status" — here, Plaintiff's race — and that "a specific basis exists for imputing the conduct that

created the hostile environment" to her employer, Mount Sinai.  *See Agosto v. N.Y.C. Dep't of*

*Educ.*, 982 F.3d 86, 102 (2d Cir. 2020) (internal quotations and citation omitted).

---

[14]     Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall
have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).
"This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions
of a contractual relationship, such as employment."  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004);
*see also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) ("Section 1981 provides a
cause of action for race-based employment discrimination based on a hostile work environment."); *Williams v.
N.Y.C. Hous. Auth.*, 61 F.4th 55, 69 (2d Cir. 2023) (analyzing hostile work environment claim under § 1981).

       Title VII similarly prohibits a hostile work environment based on race: it provides that an employer may
not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of
employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1);
*see Toombs*, 830 F. App'x at 668–69 (analyzing hostile work environment claim under Title VII).

[15]     Section 1981 allows a claim for individual liability, whereas Title VII does not.  *Tolbert v. Smith*, 790 F.3d
427, 434 n.3 (2d Cir. 2015).  Under Section 1981, an individual defendant may be held liable "only if that individual
is personally involved in the alleged deprivation."  *Littlejohn*, 795 F.3d at 314 (internal quotations and citation
omitted).

"A work environment is 'abusive' when harassment has reached a certain qualitative level that is 'sufficiently severe or pervasive [so as] to alter the conditions of the victim's employment.'"  *Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).  "On a motion for summary judgment, the question for the court is whether a reasonable factfinder could conclude, considering all the circumstances, that 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse*.'"  *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 600 (2d Cir. 2006) (emphasis in original) (citation omitted).  In making this determination, the court, assessing the totality of the circumstances, examines "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Cristofaro v. Lake Shore Cent. Sch. Dist.*, 473 F. App'x 28, 30 (2d Cir. 2012) (citation omitted); *see also Harris*, 510 U.S. at 23; *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir. 1997) (the focus of the inquiry is "the nature of the environment itself").

"The incidents complained of 'must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'"  *Raspardo*, 770 F.3d at 114 (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).  Thus, while a single incident can suffice to substantiate a hostile work environment claim, such an incident, to qualify, must be "extraordinarily severe."  *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013); *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 172 (E.D.N.Y. 2015); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'") (citation omitted).

Defendants argue that Plaintiff has failed to establish a prima facie case of a hostile work environment based on race because "(i) the conduct Plaintiff alleges does not constitute more than petty slights and trivial inconveniences; and (ii) there is no link between the alleged conduct and Plaintiff's race."  Def. Reply at 3, Dkt. 54; *see also* Def. Mem. of Law at 15–17.  Although some of Guareno's comments undoubtedly relate to Plaintiff's race, as described below, the Court nonetheless finds that those comments, in addition to the other alleged conduct, are insufficient to establish a prima facie case of hostile work environment.

It is undisputed that, on at most two occasions, Guareno used the phrase "angry Black woman" when discussing Plaintiff's demeanor at work; Plaintiff also asserts that on multiple occasions Guareno characterized Plaintiff's race more broadly as a hindrance to her advancement in the medical profession and "repeatedly criticized Plaintiff's attitude and behavior in stereotypical terms."  Pl. Mem. of Law at 9.  But during her deposition, Plaintiff could recall only two occasions in her five years reporting to Guareno in which Guareno commented "specifically about [her] race" and told Plaintiff that she came across as an "angry [B]lack woman."  *See* Pl. Tr. at 36–41; 44.  Although Guareno's comments were offensive and perhaps demoralizing, Plaintiff has proffered evidence of, at most, three occasions in more than five years in which Guareno made remarks to Plaintiff that had any racial undertones.  To establish a discriminatory hostile work environment, "there must be more than a few isolated incidents of racial enmity."  *Schwapp v. Town of Avon*, 118 F.3d 106, 110–11 (2d Cir. 1997); *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010) ("Isolated incidents generally will not suffice to establish a hostile work environment unless they are extraordinarily severe.").

Plaintiff argues that the accounts she learned of second-hand from other Black nurses who described similar race-based interactions with Guareno should be included in the scope of

conduct supporting her hostile work environment claim.  Plaintiff is correct that "[e]vidence of

harassment directed at other co-workers or occurring outside Plaintiff's presence can be relevant

to a hostile work environment claim," but such conduct "must occur in the same work

environment as Plaintiff and adversely affect the terms and conditions of her employment."

*Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 459 (S.D.N.Y. 2013) (quoting *Leibovitz

v. N.Y.C. Transit Auth.*, 252 F.3d 179, 189–90 (2d Cir. 2001)), *aff'd sub nom. Dabney v. Bed

Bath & Beyond*, 588 F. App'x 15 (2d Cir. 2014).   Plaintiff claims that she spoke with other

Black nurses and learned that they encountered similar difficulties with Guareno that they

believed were due to their race.  *See* 56.1 Counter ¶¶ 139–46.  But even if the Court could

consider that hearsay evidence on a summary judgment motion and take Plaintiff's own account

of what Guareno allegedly said to others at face value, Plaintiff has failed to establish that these

secondhand accounts contributed in any way to the terms and conditions of *Plaintiff's*

employment, let alone that they adversely affected her employment.[16]

    To be sure, despite Guareno's claimed intentions of relating to Plaintiff as a woman of

color, accusing a subordinate of acting like an "angry Black woman" is inappropriate.  Such

episodic comments, however, do not rise to the level of being objectively "severe or pervasive,"

which is necessary to establish a prima facie case of a hostile work environment under Title VII

and Section 1981.  *See, e.g.*, *Obi v. Westchester Med. Reg'l Physician Servs., P.C.*, No. 19-CV-

3022, 2020 WL 1434159, at *8 (S.D.N.Y. Mar. 23, 2020) (comments that occurred "over the

course of almost two years" that plaintiff, "as a 'black African,' [] should go back to her 'poor

---

[16]    The Court notes that at least one of the other Black nurses whose alleged account of Guareno's conduct
Plaintiff urges the Court to consider was allegedly punished severely for a "minor medication error;" that nurse
worked on a different unit than Plaintiff.  56.1 Counter ¶ 146; *see also* Pl. Tr. at 123–25.  It can hardly be said, then,
that such comments occurred in the same work environment, let alone that they had the effect of altering the terms
and conditions of Plaintiff's employment on her unit.

country'" were "episodic and not 'sufficiently continuous and concerted in order to be deemed pervasive'") (citing *Raspardo*, 770 F.3d at 114).

Although Guareno's race-based comments, when viewed in isolation, do not rise to the level of creating a hostile work environment, the Court must also analyze the incidents cumulatively to determine whether, in their totality, Plaintiff has proffered sufficient evidence to establish a prima facie case. *See Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 74 (2d Cir. 2023) ("The district court properly began by analyzing each key event in isolation because even a single episode of harassment can establish a hostile work environment if the incident is sufficiently severe.") (internal quotations omitted); *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 388 (2d Cir. 2020) ("[W]hen the same individuals engage in some harassment that is explicitly discriminatory and some that is not, the entire course of conduct is relevant to a hostile work environment claim."); *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999) (courts are "cautioned to consider the totality of the circumstances, and to evaluate the 'quantity, frequency, and severity' of the incidents," and must consider those factors "'cumulatively,' so that we may 'obtain a realistic view of the work environment'") (internal quotations and citation omitted), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Even when considering the incidents cumulatively, however, the Court finds Plaintiff has failed to establish a prima facie case of a hostile work environment based on race. The remainder of Guareno's alleged comments and conduct, such as accusing Plaintiff of falsifying doctors' notes to take time off for school and denying her time-off requests, [17] calling Plaintiff

---

[17] The Court notes that, assuming the truth of Plaintiff's version of events, the fact that Guareno granted time-off requests of two other Black nurses around the same time as she denied Plaintiff's request, 56.1 Stmt. ¶ 13–14, significantly undermines Plaintiff's claim that her race played a role in Guareno's decision-making. *See During v. City Univ. of N.Y.*, No. 01-CV-9584, 2005 WL 2276875, at *4 (S.D.N.Y. Sept. 19, 2005) (holding that plaintiff

"selfish" and a "spoiled brat," telling her that she "lacked critical thinking," communicating to EHS that Plaintiff had made mistakes, and "follow[ing] Plaintiff around the unit" are, as a whole, the sort of "run-of-the-mill workplace conflicts" that simply "do not rise to the level of an objectively hostile workplace." *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 128 (2d Cir. 2019); *see also Littlejohn*, 795 F.3d at 321 (allegations such as additional work, changes in schedule, removal from meetings, and wrongful reprimands were insufficient to establish a hostile work environment). None of the incidents that Plaintiff describes is sufficiently severe or pervasive to satisfy her burden; considering together the approximately eight incidents that occurred during nearly five years of employment, including the racially charged "angry Black woman" comments, the Court agrees with Defendants that no reasonable employee would find the conditions of her employment were "*altered for the worse*" based on her race. *Schiano*, 445 F.3d at 600 (emphasis in original) (citation omitted).

In sum, the Court finds that Plaintiff has failed to establish a prima facie case of race discrimination under Title VII or Section 1981. Accordingly, Defendants' motion for summary judgment with respect to Counts I and III is granted.

## 2.      NYSHRL and NYCHRL Claims

Until recently, courts applied the same standard to hostile work environment claims brought under federal law and the NYSHRL.[18] *See Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013); *Wheeler v. Praxair Surface Techs., Inc.*, No. 21-CV-1165, 2023 WL 6282903, at *10 (S.D.N.Y. Sep. 26, 2023). In 2019, however, the New York State legislature amended

---

failed to make out a prima facie case of race discrimination where the plaintiff conceded that the employer promoted other employees who were members of the plaintiff's protected class).

[18]      The NYSHRL makes it unlawful for an employer to discriminate against an individual because of an individual's race. N.Y. Exec. L. § 296(1)(a).

NYSHRL § 296(1)(h) so that it, like its NYCHRL analogue, should be applied "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed."  N.Y. Exec. Law § 300; *see McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020).  The amended NYSHRL also eliminates the requirement that harassing or discriminatory conduct be "severe or pervasive" for it to be actionable; instead, the conduct need only result in "inferior terms, conditions or privileges of employment."  *See* N.Y. Exec. Law § 296(1)(h); *Maiurano v. Cantor Fitzgerald Secs.*, No. 19-CV-10042, 2021 WL 76410, *3 n.2 (S.D.N.Y. Jan. 8, 2021).  Although Plaintiff need not show that she was treated differently than others in a non-protected class, it is "an affirmative defense . . . that the harassing conduct does not rise above the level of what a reasonable victim of discrimination with the same protected characteristic or characteristics would consider petty slights or trivial inconveniences."  N.Y. Exec. Law § 296(1)(h).

Section 300's liberal construction directive was made effective August 12, 2019, but Section 296's eradication of the "severe or pervasive" standard applies only to claims that accrue on or after the amendment's effective date, which was October 11, 2019.  *See* N.Y. Senate Bill S6594/A8424 ("Section[] one . . . shall only apply to claims accrued under such section[] on or after the effective date of such section[].");  *see also Matthew v. Tex. Comptroller of Pub. Accts.*, No. 21-CV-5537, 2022 WL 4626511, *10–11 (S.D.N.Y. Sep. 30, 2022).  New York courts have not yet analyzed substantively how the amendment alters standards of liability under the NYSHRL, but, within this District, courts have interpreted the amendment "to render the standard for claims closer to the standard of the NYCHRL."  *Livingston v. City of New York*, 563

F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); *see also Oliver v. City of New York*, No. 19-CV-11219, 2023 WL 2160062, at *19 n.8 (S.D.N.Y. Feb. 22, 2023).

Plaintiff claims that Guareno denied her time-off requests and called her an "angry Black woman" in the fall of 2018, then again called her an "angry Black woman" in or around October of 2019; the remaining conduct about which Plaintiff complains indisputably transpired after the amendment to the NYSHRL. Deciding Plaintiff's NYSHRL claim requires the Court to apply the "severe or pervasive" standard to the alleged 2018 remark and denial of time-off requests, and the amended liberal standard to the alleged 2019 remarks and 2020 conduct. *See, e.g.*, *Matthew*, 2022 WL 4626511, at *10–11 (describing uncertainty regarding which version of NYSHRL applies to incidents occurring after Section 300 was enacted but before the effective date of the revised Section 296). For the same reason that Plaintiff failed to establish a prima facie case of race discrimination under Title VII and Section 1981's higher standard, Plaintiff's NYSHRL claim regarding the alleged 2018 remark and denial of time-off requests fails under the NYSHRL's pre-amendment "severe or pervasive" standard.

The Court considers Plaintiff's post-amendment NYSHRL and NYCHRL claims together.[19] When faced with a hostile work environment claim under the NYCHRL, courts must "construe its provisions broadly in favor of a plaintiff — *i.e.*, to analyze whether a plaintiff is treated 'less well' because of a discriminatory intent." *Nguedi v. Fed. Reserve Bank of N.Y.*, 813 F. App'x 616, 617–18 (2d Cir. 2020) (citation omitted). In other words, Plaintiff must show that she was treated less well than other employees at least in part because of her race. *Williams*, 61 F.4th at 69; *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 8 (2d Cir. 2017) (citing *Mihalik v.*

---

[19] Under the NYCHRL, it is "an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived . . . race . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code. § 8–107(1)(a).

*Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102,110 (2d Cir. 2013)).  "The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes that discrimination played no role in its actions."  *Williams*, 61 F.4th at 69 (citation omitted) (cleaned up).  Similar to the NYSHRL, under the NYCHRL, an "employer may prevail on summary judgment if it shows that a reasonable jury could conclude only that the conduct amounted to no more than a petty slight.  Thus, courts may still dismiss 'truly insubstantial cases,' where the defense is clear as a matter of law."  *Mihalik*, 715 F.3d at 111 (citation omitted).

Even under the lower NYSHRL and NYCHRL standard, the Court finds that Plaintiff does not survive summary judgment because no reasonable jury could conclude that discrimination on the basis of race played a role in Defendants' actions.  *See, e.g.*, *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (requiring plaintiff to show "differential treatment of any degree based on a discriminatory motive").  Given the two incidents in which Guareno allegedly called Plaintiff an "angry Black woman" and the claim that Guareno manufactured complaints about Plaintiff's job performance resulting in two separate fact-findings, Plaintiff has established a prima facie case that she was treated "less well."  The burden then shifts to Defendants to offer a legitimate, non-discriminatory rationale for its actions.  *See Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 75–76 (2d Cir. 2015).  If Defendants do so, summary judgment is appropriate if no reasonable jury could conclude either that the Defendants' reasons were pretextual or that the Defendants' "stated reasons were not [the] sole basis for taking action, and that [their] conduct was based at least in part on discrimination."  *Id*. at 76 (internal quotation marks and citation omitted).

Defendants assert that Guareno made the "angry Black woman" comments to Plaintiff in an effort to relate to her as a woman of color and that those are the only race-based remarks that Plaintiff alleges.  Def. Mem. of Law. at 10–11.  They also assert that Guareno observed Plaintiff's work just as she did any other nurse whom she supervised; Plaintiff's time off requests were denied because it was increasingly difficult to accommodate her school schedule; and the fact findings, which resulted in Plaintiff being cleared of any wrongdoing, were conducted in response to complaints by third parties.  *Id.* at 12, 14; 56.1 Counter ¶¶ 133–34.

Plaintiff has presented no evidence that any of Defendants' reasons for Guareno's actions are pretextual or that there was any other reason for those actions.  Though Plaintiff may have subjectively viewed the comments as offensive and racially charged and may have been unhappy with Guareno's supervision and denial of her time-off requests, other than the "angry Black woman" comments, which themselves amount only to "petty slights," she has presented no evidence to support the inference that they were race-related.  N.Y. Exec. Law § 296(1)(h).  *See James v. Pernod Ricard USA, LLC*, No. 21-CV-10795, 2023 WL 2938162, at *5 (S.D.N.Y. Apr. 13, 2023) ("[T]he plaintiff 'still bears the burden of showing that the conduct is caused by a discriminatory motive.'") (citation omitted).

In short, even though Plaintiff met her prima facie burden under the NYSHRL and NYCHRL, she has failed to present evidence from which a reasonable fact finder could determine that race played any role in how she was treated or that Guareno's comments were anything other than petty slights.  Accordingly, Defendants' motion for summary judgment on Counts V and VIII is granted.

**B.     Retaliation Claims**

**1.     Title VII, Section 1981, and NYSHRL Claims**

Retaliation claims, whether brought under Title VII, Section 1981, or NYSHRL are

analyzed under the *McDonnell Douglas* framework.  *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172,

178 (2d Cir. 2023); *Banks*, 81 F.4th at 275; *Charlemagne v. Educ. All., Inc.*, No. 22-CV-1136,

2023 WL 5917648, at *5 (S.D.N.Y. Sep. 11, 2023). As noted above, courts are required to

construe the NYSHRL statute "liberally for the accomplishment of [its] remedial purposes."

N.Y. Exec. Law § 300.

To establish a prima facie case of a retaliation "a plaintiff must demonstrate that (1) she

engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected

to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4)

there was a causal connection between the protected activity and the materially adverse action or

actions."  *Carr*, 76 F.4th at 180 (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68).  A

"materially adverse" action need not meet the higher "severe and pervasive" standard necessary

to make out a hostile work environment claim; rather, in the context of a claim of retaliation, an

action is materially adverse if it "well might have dissuaded a reasonable worker from making or

supporting a charge of discrimination."  *Id.* at 180–81.[20]

It is undisputed that Plaintiff complained at least once to Labor Relations about Guareno

and that Guareno knew she was the subject of the complaint Plaintiff made in late May 2020.

---

[20]     Plaintiff incorrectly argues that a retaliation claim is subject to the same "severe and pervasive" standard of conduct as a hostile work environment claim based on race.  Pl. Mem. of Law at 14 (citing *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 244 (E.D.N.Y. 2015)).  To Plaintiff's benefit, the Second Circuit recently rejected the standard articulated in *Bacchus* and held that "[e]ven if a plaintiff labels her retaliation claim as a 'retaliatory hostile work environment' claim, courts should not consider whether the allegedly retaliatory actions meet the higher 'severe and pervasive' standard.  All that is relevant is whether the actions, taken in the aggregate, are materially adverse and would dissuade a reasonable employee from making a complaint of discrimination."  *Carr*, 76 F.4th at 181.

*See McKenna v. Santander Inv. Sec., Inc.*, No. 21-CV-941, 2022 WL 2986588, at *10 (S.D.N.Y. July 28, 2022) (an "internal complaint to company management" can constitute protected activity).  Plaintiff argues that Guareno retaliated against her shortly after her second complaint to Human Resources by requiring Plaintiff to participate in two fact findings in rapid succession. Pl. Mem. of Law at 14.  Plaintiff further argues that Guareno "started continuously following Plaintiff around the unit, shadowing her and watching her every move in an evident effort to intimidate her or force her into a mistake she could use against her."  *Id.*

The fact findings are insufficient to show that Plaintiff was retaliated against for her complaint about Guareno's conduct.  First, a fact finding would not discourage a reasonable person from complaining about discrimination.  Plaintiff admits that both were triggered by a complaint made by other employees, not by Guareno.  *See* 56.1 Counter ¶¶ 105, 122–23.[21] Accordingly, even if a fact finding could have the potential to discourage others from engaging in protected activity (and there is no indication that it would), Plaintiff has failed to create a question of fact that there was a causal connection between the fact findings and Plaintiff's complaint against Guareno.  56.1 Stmt. ¶¶ 39, 45–46; 56.1 Counter ¶¶ 88, 127.

The only basis for concluding that Defendant retaliated against Plaintiff is her claim that, "after Plaintiff's complaints," Guareno began to shadow Plaintiff on "virtually every shift," even though Guareno's standard practice was to shadow employees under her supervision once or twice a quarter.  56.1 Counter ¶¶ 132–34.  Heightened scrutiny by an employer can qualify as an adverse employment action.  *See Drees v. Cnty. of Suffolk*, No. 06-CV-3298, 2009 WL 875530, at *8 (E.D.N.Y. Mar. 30, 2009) (finding "excess scrutiny of [Plaintiff's] work," along with the denials of Plaintiff's requests to be retrained sufficient to survive summary judgment).

---

[21]     As noted above, Plaintiff speculates that the complaints that caused the fact findings were engineered by Guareno.  Because Plaintiff adduced no evidence to support her speculation, the Court cannot consider it.

Although Plaintiff's evidence is vague regarding when the alleged "overbearing oversight" began, she testified that the incident in which Guareno accused her of pushing a medication too quickly—an incident that occurred while being shadowed by Guareno—occurred in "early 2021 or maybe late 2020."  Pl. Mem. of Law at 15; Pl. Tr. at 136–38.  A causal connection "may be established through evidence of retaliatory animus directed against a plaintiff by the defendant, or by showing that the protected activity was closely followed in time by the adverse action."  *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (internal quotation marks and citations omitted).  There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a [protected activity] and an allegedly retaliatory action."  *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001).  Instead, the Court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases."  *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (noting that the passage of "only six months" was sufficient to support a causal connection); *Summa*, 708 F.3d at 128 (finding a seven-month gap between plaintiff's filing of a lawsuit and the decision to terminate her employment not to be "prohibitively remote" and "within the temporal range that we have found sufficient to raise an inference of causation"); *Kopchik v. Town of East Fishkill*, 759 F. App'x 31, 35 (2d Cir. 2018) (finding a nine month gap between the defendant learning of plaintiff's EEOC charge and its efforts to terminate him was not too long to support a causal inference).  Although Plaintiff notes only that Guareno's excessive oversight began "[a]fter Plaintiff's complaints," her lack of specificity does not necessarily doom her retaliation claim.  56.1 Counter ¶ 132.  A plaintiff bears the "de minimis" burden of establishing

a prima facie case of retaliation.  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir.

2013).

      Plaintiff lodged her second complaint against Guareno in May 2020, 56.1 Stmt. ¶ 22, and

Guareno discussed the substance of that complaint with Labor Relations on June 22, 2020, 56.1

Stmt. ¶ 23.  Plaintiff testified that the incident in which Guareno accused Plaintiff of pushing a

medication too quickly occurred in "early 2021 or maybe late 2020."  Pl. Tr. at 136–38.

Construing the evidence in the light most favorable to Plaintiff, this incident could have occurred

as early as November 2020; that would have been just five months after Guareno learned of

Plaintiff's complaint from Labor Relations, well within the time frame that could support a

finding of a causal connection.  A reasonable jury could find that Guareno's alleged heightened

scrutiny of Plaintiff's work is the type of behavior that "might dissuade[] a reasonable worker

from making or supporting a charge of discrimination."  *Fincher*, 604 F.3d at 721 (citation

omitted).

      Because Plaintiff has met her initial burden of showing a protected activity that was

followed by an action that was materially adverse and that the timing of the materially adverse

action raises the inference that it was caused by the protected activity, Plaintiff has satisfied her

prima facie case.  The burden then shifts to Defendants to offer "a legitimate, non-discriminatory

reason for the adverse employment action."  *Nguedi.*, 2019 WL 1083966, at *8.  Defendants

dispute that Guareno engaged in excessive supervision; Guareno testified that she shadowed

Plaintiff once or twice each quarter, the same as for any other staff member.  56.1 Counter ¶¶

133–134.

      Because the extent of supervision by Guareno is disputed and the Court must construe all

facts in favor of the non-moving party, the Court cannot conclude on summary judgment that

Defendants have rebutted Plaintiff's prima facie case of retaliation.  Consequently, Defendants

motion for summary judgment on Plaintiff's retaliation claims under Title VII, Section 1981, and

the NYSHRL (Counts II, IV, and VII) is denied.

### 2. NYCHRL Claim

A retaliation claim under the NYCHRL must be analyzed "separately and independently"

from state and federal discrimination claims, as the NYCHRL's provisions are "uniquely

broad."  *Mihalik*, 715 F.3d at 109 (citing *Hernandez v. Kaisman*, 103 A.D.3d 106, 957 N.Y.S.2d

53, 58 (1st Dep't 2012)).  A plaintiff "must show that she took an action opposing her

employer's discrimination, and that, as a result, the employer engaged in conduct that was

reasonably likely to deter a person from engaging in such action."  *See id*. at 112 (internal

citations omitted).

Because Plaintiff has raised triable issues of material fact regarding her retaliation claims

under federal and state law, she has necessarily done so under the NYCHRL's more lenient

standard.  *See Williams,* 61 F.4th at 76 (citing *Mihalik,* 715 F.3d at 109 (explaining that federal

and state law operate "as a floor below which the City's Human Rights law cannot fall")).  Thus,

Defendants' motion for summary judgment on Count X is denied.

### C. The State and City Law Aiding and Abetting Claims against Guareno

Unlike Title VII, both the NYSHRL and NYCHRL allow for individual liability.

Plaintiff argues that Guareno aided and abetted the creation of a discriminatory and retaliatory

work environment, in violation of state and city law.  *See* N.Y. Exec. L. § 296(6) (making it "an

unlawful discriminatory practice [under state law] for any person to aid, abet, incite, compel or

coerce the doing of any of the acts forbidden under this article, or to attempt to do so"); N.Y.C.

Admin. Code § 8–107(6) (prohibiting the same conduct under city law).  Courts use the same

standards to evaluate aiding and abetting claims under the NYSHRL and the NYCHRL because

"the language of the two laws is virtually identical." *Feingold*, 366 F.3d at 158 (internal quotations and citations omitted).

Individual liability exists if either (1) the individual defendant is an "employer," N.Y. Exec. Law § 296(1), or (2) the defendant aided and abetted the unlawful discriminatory acts, *id*. § 296(6). *See Xiang v. Eagle Enterprises, LLC*, No. 19-CV-1752, 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020). "An individual defendant is liable as an 'employer' under § 296(1) 'when that individual has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others,' *i.e.*, the power to hire or fire." *Id.* (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012)).

Guareno was a Nurse Manager and Plaintiff's supervisor from May 2016 to May 2021. 56.1 Stmt. ¶ 3. Although Plaintiff testified that she believed "Guareno was looking for a reason to fire her," 56.1 Counter ¶ 124, Plaintiff has presented no evidence that Guareno actually had the authority to fire her. Guareno testified that she had a role in deciding who was promoted to charge nurse, and no other information regarding her ability to fire employees can be gleaned from the record. Guareno Tr. at 42. As such, the Court will analyze Plaintiff's claims under the second theory of individual liability – whether Guareno aided and abetted the unlawful acts of Mount Sinai. Both the NYSHRL and the NYCHRL "allow a co-worker who actually participates in the conduct giving rise to a [retaliation] claim to be held liable . . . even though that co-worker lacked the authority to either hire or fire the plaintiff." *Sanderson v. Leg Apparel LLC*, No. 19-CV-8423, 2023 WL 2753200, at *20 (S.D.N.Y. Mar. 31, 2023) (citing *Feingold*, 366 F.3d at 158).

Although Plaintiff has not established a prima facie case of hostile work environment based on race, she has provided sufficient evidence of retaliation for her claims under federal,

state, and city law to survive.  It is Guareno's alleged heightened oversight of Plaintiff's work

that gives rise to Plaintiff's retaliation claims.  As such, if Plaintiff can persuade a jury that she

was subject to overbearing oversight from Guareno, Guareno can be held individually liable for

aiding-and-abetting Mount Sinai's retaliation.  Consequently, Defendants' motion for summary

judgment on Counts VI and IX is denied.

### D.    Vicarious Liability Claim under NYCHRL

Finally, Plaintiff brings a claim under the NYCHRL for the discriminatory conduct of

employees.  Compl. ¶¶ 98-100; N.Y.C. Admin. Code § 8–107(13).  This section imputes liability

to employers "based upon the conduct of an employee or agent which is in violation of

subdivision 1 or 2 of this section . . . where: (1) [t]he employee or agent exercised managerial or

supervisory responsibility; or (2) [t]he employer knew of the employee's or agent's

discriminatory conduct, and acquiesced in such conduct or failed to take immediate and

appropriate corrective action . . . or (3) [t]he employer should have known of the employee's or

agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such

discriminatory conduct."  N.Y.C. Admin. Code § 8–107(13)(b); *Schaper v. Bronx Lebanon*

*Hosp. Ctr.*, 408 F. Supp. 3d 379, 396 (S.D.N.Y. 2019).

There is a question of fact whether Plaintiff was retaliated against in violation of the

NYCHRL.  Because Guareno was Plaintiff's direct supervisor, vicarious liability may be

imposed on Mount Sinai under Section 8-107(13) for Guareno's actions.  *See Schaper*, 408 F.

Supp. 3d at 396.  Defendants' motion for summary judgment on Count XI is, therefore, denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part

and denied in part.  The Court grants the motion with respect to all of Plaintiff's claims for a

hostile work environment based on race.  The Court denies the motion with respect to the claims

for retaliation, aiding-and-abetting, and vicarious liability premised solely on Guareno's alleged

overbearing oversight of Plaintiff's work.

By **January 3, 2024**, the parties shall inform the Court whether they believe that a

referral to the court annexed mediation program or to the Honorable Valerie Figueredo, United

States Magistrate Judge, for a settlement conference would be helpful.  If not, the Court will

schedule a status conference at which it will set a trial date.

The Clerk is respectfully directed to close the open motion at docket 42.


**SO ORDERED.**


**Date:   December 1, 2023**                                    **VALERIE CAPRONI**
        **New York, New York**                              **United States District Judge**